## A. B. DICK CO. v. FUERTH.

### (Circuit Court, D. New Jersey. July 11, 1893.)

1. PATENTS FOR INVENTIONS—INVENTION—STENCIL SHEETS.
   Letters patent No. 377,706, issued February 7, 1888, to John Broderick, for a "prepared sheet for stencils," consisting of a thin, highly porous sheet of material, such as Japanese dental paper, or yoshino, coated or impregnated with a soft waxy substance, such as paraffine, which, when the sheet is pressed upon by a writing or printing instrument, will be displaced on the lines of impression so as to leave them open to the passage of ink through the pores of the sheet, involve patentable invention over the devices of the prior art in which sheets of material were coated with hard wax, as in patent No. 332,890, issued December 22, 1885, to David Gestetner, and then rendered pervious to ink on the lines of the letters by cutting away the body of the sheet, or by puncturing it with a proper instrument.

2. SAME—SUFFICIENCY OF SPECIFICATIONS.
   There is no defect or insufficiency in the specifications of the Broderick patent such as would prevent those skilled in the art from making and using the same, and the patent is not objectionable on this ground.

3. SAME—INFRINGEMENT—ESTOPPEL—FALSE MARKING.
   An applicant for a patent caused to be stamped upon some of the articles sold the words: "Pat. July 6, 1886. Pats. applied for." The patent of July 6, 1886, had been granted to the applicant for a different article, but the words were used by advice of counsel, under a misapprehension of the law, and without any intention to deceive the public. *Held*, that these words might be rejected as mere surplusage, and the applicant was not estopped from suing a subsequent infringer, although the stamping of an unpatented article as patented is forbidden by Rev. St. § 4901.

4. SAME—SUIT FOR INFRINGEMENT—TECHNICAL DEFENSES.
   Where the defense to a suit for infringement is purely technical in character, a court of equity should not give effect thereto, unless the proof upon which the technicality is based is ample and satisfactory.

In Equity. Bill for infringement of a patent. Decree for complainant.

D. H. Driscoll, for complainant.
J. A. Beecher, for defendant.

GREEN, District Judge. The complainant, the A. B. Dick Company, filed its bill of complaint in this cause against the defendant, William G. Fuerth, to restrain an alleged infringement of letters patent No. 377,706, granted to one John Broderick, February 7, 1888, for a "prepared sheet for stencils," the title to which, by mesne assignments, is now in the complainant. In the specifications of the letters patent Mr. Broderick declares that he has invented certain new and useful improvements in preparing sheets for stencils or transmitting printing sheets; that in the practice of his invention he employs a thin porous sheet of material, impregnated or coated with a gummy or waxy substance, or other material impervious to ink, and of such porosity, and a gummy or waxy filling of such consistency, that when the impregnated or

coated sheet is placed upon a suitable support or bearing surface, and impressed upon with a writing or printing instrument, the gummy or waxy filling will, under the pressure thereof, be displaced at the point or lines of impression so as in all cases to leave them open to the passage of ink through the pores of the sheet; and he claims that such sheets so prepared dispensed with the necessity of employing in the preparation of stencil sheets an abrading or puncturing instrument, bearing surface, or plate. He further declared that he prepared his improved stencil sheet by preference from a sheet of thin, highly porous paper, by immersing the same in a bath of melted gummy or waxy substance, such as paraffine, of about 120° Fahrenheit fusion point. In a paper so prepared he asserted that the stylus passes over the surface with the ease and fluency of a lead pencil, so as to produce an almost perfect representation of the writer's autograph with a pen. The stencil, thus prepared, is then used in duplicating impressions, in the manner already familiar, by placing it on a sheet of paper, and passing an inked roller over it, or any other manner in which such a stencil may be used. He further says that the described stencil plate for the production and multiplication of impressions of printing is made by impressing the type letters, or other desired characters, designs, pictures, maps, or illustrations upon the prepared sheet with type (as by a typewriting machine) or plates on which the letters, etc., are made of raised lines and surfaces, such as, on being so impressed, will express from the prepared sheet the gummy or waxy substance, leaving the fibers exposed and open to the transmission of ink.

There are three claims in the letters patent, which are as follows:

"(1) A transmitting printing sheet, consisting of a thin, porous sheet, through which ink is readily transmitted, such as Japanese dental paper, or yoshino, filled or coated with a substance impervious to ink, as paraffine, substantially as described. (2) A transmitting printing sheet, consisting of a thin, porous sheet, through which ink is readily transmitted, such as Japanese dental paper, or yoshino, filled or coated with a substance impervious to ink, as paraffine, and having this filling or coating removed at the points or lines of printing, substantially as described, for the purposes specified. (3) A prepared sheet for stencils, consisting of a sheet of Japanese dental paper, or yoshino, coated with a substance impervious to ink, substantially as described."

Of these claims only the second and third are involved in this controversy. Looking at the invention, then, broadly considered, it seems to consist of a novel stencil, or rather, perhaps, a new transmitting printing sheet, extremely thin in substance, which is coated or filled with some soft waxy substance impervious to ink, and yet is so porous that in the removing of the filling or coating of wax at any point by pressure, the sheet itself, without disturbance of fiber, becomes open to the transmission of ink through it. So that the result arrived at by Mr. Broderick in his invention, if it be, indeed, an invention, is this: That the stencil is

made by the removing of the soft waxy or gummy filling or coating, rather than by the heretofore usual and more common way by perforation or cutting away of the sheet itself upon which the coating 'or filling has been placed. A stencil may be defined to be a thin plate or sheet of any substance in which a figure, letter, or pattern is formed by cutting completely through the plate. Mr. Broderick's achievement consists in the formation of. a stencil without the cutting of the letters, figures, or patterns through or from the body of the porous substance upon which the soft waxy or gummy material has been placed. Stencils were very commonly in use long before Mr. Broderick's invention. They were made not only of metals, but as well of other material, such as paper, which had been previously coated with some substance which would render it impervious to the passage of ink. So that it must be admitted there was nothing new in making a stencil itself, as a stencil, nor in the coating of the thin paper with wax or other gummy substance as a component part thereof. Whether what Mr. Broderick did in this case evidences patentable novelty and shows invention depends not only upon the state of the art, but as well upon the exact means by which the end sought by Mr. Broderick was attained. The defendant stoutly contends that this alleged invention is no invention at all; that it does not embrace any substantial variation or change from what then belonged to the art, and does not, therefore, involve the exercise of inventive faculty; that the subject-matter of the letters patent was wholly within the domain of common knowledge among persons skilled in the art; that each element in the claim was well known, and that it only required the exercise of mechanical skill to attain the result which Mr. Broderick claims to have been the first to invent. So far as the state of the art is concerned, it is undeniably true that stencils were well known and in common use prior to the date of the letters patent granted to Broderick. Stencils made from waxed or gummed paper were quite as common as those made from metals or other materials. The defendant introduced in testimony as a substantial part of his defense a large number of patents, including as well those which related to the process of coating paper with wax and other gummy substances as those which approached more nearly the domain of the Broderick invention, and related directly to stencils and other devices for making multiform copies of writings, designs, and figures. And in this part of the case the defendants' counsel ably summed up his argument as follows:

"The preparation and manufacture of stencils was within the domain of common knowledge among persons skilled in the art, and each element in each claim was well known, and the function which each element would perform, combined with other elements specified in each of the claims, was well known. The alleged invention required only mechanical skill, and no more than ordinary knowledge and judgment in the selection of a more or less porous paper of a class and kind then well known in the market and to the

trade, and in common and public use for the same purposes, and prepared in the same way, and of varying porosities, according to the style and character of the work required."

Of course, if the argument of counsel, sound in itself, had been fortified by facts in evidence, it would have ended this litigation, in this court at least; but, after a most careful consideration of the matters involved in this controversy, I am unable to assent to the conclusions insisted upon by the defendant as being well founded.

I do not think it necessary to examine minutely each one of the alleged anticipating patents, nor to point out all the particulars which differentiate them from the invention of Broderick. Nor can it be necessary to consume time in explaining just what the state of the art displayed. It is true beyond question that the elements which, combined, appear in and characterize the stencils in common use, as well as the inventions covered by the letters patent, are, in cases where paper forms the basic material, without exception, porous paper upon the one hand, and a filling or impregnation or covering of wax upon the other. But I do not find any stencil known to the art which would fail to come within the definition of a stencil as already given; that is to say, in each case the figure or letter or pattern which is to be copied by the use of a stencil is primarily formed by cutting or perforating in some wise through the substance, plate, or material, or whatever it may be, which bears the coating of wax or gummy substance. Thus, in some of the patents, the thin paper covered with wax is laid upon a roughened under-surface, and the figure to be copied is then traced over it; pressure being had, the sharp roughness of the under-surface penetrates through the thin, porous paper, causing openings, minute to be sure, but very close together, making an almost continuous cutting, through which the ink is transmitted to the sheet upon which the printing is to be done. In others, peculiar kinds of acid ink are to be used, which eat through the fibers or a material of the surface supporting the wax, and so practically make the stencil by cutting through the surface of the stencil itself. In yet other instances the writing or printing is done by a notched or roughened wheel of small diameter, which forces its way through the fibers or surface of the material. The result in each case is the same. The basic material is cut through or perforated. All these devices differ, I think, from the improved stencil now under consideration. Does this latter stencil show invention? It is very difficult to define what invention is. It certainly is not reasoning. It does not arise from any logical deduction. A necessary conclusion from certain admitted premises will not support it. Inferences such as a man of ordinary intellect would naturally draw when he is possessed of the ordinary skill and knowledge of the art in respect to which the inference may be drawn, falls very far short of being invention. But if one creates, not only by the operation of mind, but as well actually, physically, new means by which is necessarily obtained a certain specific end, means which are novel to the creator as well

as novel to the world, which had never existed before, at least in the combination or conjunction in which the creator causes them to exist for the first time,—he who does this must, I think, be regarded as an inventor.

Now, as we have seen, before Mr. Broderick's alleged invention, stencils were made for copying purposes by cutting through or perforating the basic plate or material. The letters to be copied, or the figures or the words or the designs, were bodily cut out of the material which formed the basis of the stencil. The result was that in all the stencils which had been made previous to the invention of Mr. Broderick serious difficulty had been encountered, especially with certain letters called "loop letters;" such, for instance, as B, D, O, P, and Q. It was impossible to make these letters perfectly, simply from the impossibility of supporting the center part of the letter, in any other way than by attaching it to the body of the stencil, thereby making the letter itself imperfect; or, if not so attached, the letters would, so far as the loops were concerned, become a mere open space, without exhibiting the peculiar inner lines of the letters themselves, which gave them their distinct form and shape, and when used as stencils would cast upon the paper simply a blot. It was to overcome this defect in all stencils, and to make a perfect letter or design or figure, that Mr. Broderick made his invention. He discovered, after a long search and many experiments, that the paper known as "Japanese dental paper," or "yoshino," was so very porous that its fibers need not at all be cut or destroyed or abraded in the manufacture of stencils; and that, if he covered yoshino paper with a waxy or gummy substance, very soft in consistency, and then removed by pressure only the wax in conformity with the shape of the letters, figures, and designs which he desired to print, the ink would be easily transmitted in the printing process through the paper where the wax had been removed, without requiring any severance or disturbance of the fibers of the paper itself. In making loop letters, therefore, by this method and means, the inner part of the loop would still be firmly a part of the stencil itself, the fibers running from the loops to the body of the paper not being disturbed or cut or weakened in any degree. Hence a perfect letter or design or figure was produced. It is apparent, therefore, that there is a very great difference between the stencils which were described in the Broderick patent and the stencils which were generally in use, including the stencils which were covered by the letters patent relied upon by the defendant. As has been said before, in all the stencils which were known before they were improved by Broderick, it was absolutely necessary that the substance or material or fiber of the stencil itself should be cut or perforated in the formation of proposed letters, and in this respect they are all radically different from Broderick's invention; for by his invention the stencil is made by removing the waxy coating, and by leaving intact the basic substance of the stencil plate. And just here it is well to notice that not only did Broderick's invention

introduce the porosity of the paper as an element in his "improvement of stencils," but as well for the first time made use of a soft wax for the necessary coating, and this was quite as important as it was novel. Hard wax has a tendency to make the underlying base of paper in stencils harsh and rigid and brittle. Pressure exerted upon such waxy surfaces inevitably ruptured or broke or seriously abraded the fibers of the paper, and so affected not only the solidity of the stencil, but as well destroyed the sharpness of outline so necessary in letters and designs. A soft wax is so called simply because its particles flow upon each other, move readily and easily, while it produces no deleterious effect upon the natural pliability of fiber. Now, as the particles of soft wax move easily, they readily yield to slight pressure upon their surface; and so, without great force of impression, the proposed letter or design or figure of the stencil may be easily and perfectly formed. Thus, safely and simply, was avoided the danger of destroying the supporting fiber inherent in other stencil sheets. Now, nowhere in the prior art is there so much as a hint that a soft wax would, as a coating for stencil sheets, be valuable. In fact, not only was there no such suggestion, but there was a total disregard of the consistency of the coating substance in the making of stencils. It was considered as absolutely of no account; and its value, as a matter of careful judgment, was wholly ignored.

It may be argued that, after all that can be said about the advantages arising from the peculiar consistency of the wax used by Broderick, the difference between it and the harder wax of other stencil sheets is only a matter of degree; but this is hardly so. The primary object of using wax on stencil sheets is simply to render the sheet impervious to ink, save where the sheet is cut away in the delineation of the object to be copied. If the use by Broderick of a softer wax than had ever been purposely used before was for this purpose alone, the question of degree might well be raised; but such was not the only, nor the chief, use to which the wax selected by Broderick was purposed. He chose the softer wax for his stencil coating chiefly because it was to become practically the stencil. In impressing upon the softer wax the letters and figures to be copied, he easily displaced the wax itself because of its very softness, at the very points or lines of impression, and so made a perfect opening or place, through which the ink passing traced a perfect copy through the network of fibers left bare by such displacement. Even the defendant admits that for such purpose a hard wax is not only unsuitable, but unusable; hence there can be no question of degree raised, for the harder wax cannot be a factor in the problem solved.

In the course of the argument, counsel for defendant very strenuously insisted that one of the patents which has already been generally referred to as an anticipating patent was in reality a foundation patent for the use of Japanese paper in the construction of stencils. He referred to No. 332,890, which was granted

on December 22, 1885, to David Gestetner, of London, England, for a new and improved transfer or reproducing paper. In those letters patent it was stated that the object of the invention was to produce a new and improved paper, to, be used for reproducing letters, drawings, documents, etc., which paper is perforated by means of a well-known perforating device, such as a tooth wheel of the nature of a stylus, or any other perforating instrument. The invention was said to consist of a sheet of bamboo fiber paper, on one surface of which a layer of wax or paraffine is fixed. The paper used was a Japanese paper made from a bamboo fiber. The letters patent contain two claims, the first of which was for an improved article of manufacture, being a sheet of transfer paper, consisting of a sheet of bamboo fiber paper, on one side of which a layer of wax or paraffine is fixed, substantially as shown and described. The second claim is not in any wise different. It may readily be admitted that this was the first time that bamboo fiber paper is mentioned in any of the letters patent relating to stencils, but I think the evidence is clear in this case that the paper which Gestetner used in his stencil sheet was a very different paper indeed from the paper known as the "yoshino." A great mass of testimony was taken touching the different kinds of paper manufactured in Japan, and the materials used in the manufacture. It is not at all necessary to follow the witnesses through the somewhat contradictory statements which they made touching Japanese paper. I think the weight of the testimony shows very clearly that the paper used by Gestetner was technically known as "gampi," and that the peculiarity of the gampi paper was that, while it was very thin, its fibers were exceedingly close together. Photographic copies of the papers, which were produced and shown, clearly exhibited this peculiarity, so that, if the invention of Broderick was based alone upon the use of yoshino paper, I still think that the Gestetner patent could not be looked upon as an anticipation. The letters patent granted to Gestetner especially referred to the manufacture of the stencil by means of a perforating or puncturing instrument; that is, an instrument which would perforate or puncture the paper. This is not the way in which Broderick made his stencil. He absolutely refrained from perforating or puncturing the paper which he used. The gampi paper, without perforation, could not be made into a stencil; its fibers being too close to permit the passage of ink, except through perforations or punctures. The yoshino paper requires no separation or piercing or puncturing of the fibers; for they lie so far apart that ample space is afforded for the passage of the ink after the letters or figures have been once impressed upon the surface of the wax. Much stress is laid upon this patent in the argument, but I am unable to see that it has any special bearing upon the merits of the case. It must be borne in mind that Broderick does not claim as his main element yoshino paper, but yoshino paper covered, coated with a soft wax, easily displaceable.

Besides these defenses, there were a number of other defenses interposed by the defendant, which were purely technical in character. It may be open to question how far a court of equity should regard defenses which are purely technical when interposed by one who is an infringer of the letters patent which he is seeking to destroy. If it be obligatory upon a court to consider them, and give them weight in the final determination of the question at issue, it is equally clear it is its duty to insist that the proof upon which the technicality is based should be ample and satisfactory. One of these defenses thus interposed by the defendant is that certain of the stencils made under this patent by Broderick were stamped as being made under another patent previously granted to Broderick. Undoubtedly some of the stencil sheets which Broderick made did have upon them these words: "Write on this side. Pat. July 6, 1886. Pats. applied for." This patent of July 6, 1886, is known as the "autographic patent," and it was improper, undoubtedly, to mark the sheets of the typewriter stencil paper as patented July 6, 1886. But it will be noticed that the words "Pats. applied for" were also stamped on the sheets; that is, that application had been made to the patent office for letters patent for the very sheet which was then presented to the public. I think it would be fair to reject the first part of the inscription as mere surplusage. If not, the most that can be said is that a section of the Revised Statutes (section 4901) had been violated, and, if the defendant had been injured in any way thereby, he might enforce the collection of the penalty which this section provides for its violation. When that penalty has been enforced, no other or further punishment can be inflicted upon the wrongdoer. But I think it is a complete answer to this contention of the defendant—that Broderick is estopped from claiming the protection of the letters patent in this case—that there is not a particle of evidence to show that the defendant impressed the inscription upon his stencil sheet with an intent to deceive the public. The worst that can be said of it is that it was a mere result of a misunderstanding of the law; an act, as the proofs show, committed under the advice of counsel. I do not think, therefore, that this defense can avail the defendant.

Another technical defense is that the letters patent in this case were granted after examination by the officials connected with one department of the patent office without knowledge of the patent previously granted to Gestetner for his paper, or to Broderick for his file plate patent. In fact the allegation is that some one in Broderick's interest surreptitiously removed the Gestetner patent and the Broderick file plate patent from that division of the patent office where the patent in suit was being examined, for the purpose of keeping from the knowledge of the examiner in that department the existence of those patents. A large amount of testimony taken in the cause relates to this alleged fraud. I shall not rehearse it here. It is enough to say that, in my judgment,

not only does the testimony fail to establish the contention of the defendant, but it does not raise a scintilla of doubt as to the perfect fairness of the officers in the patent office in dealing with this matter. It would take much stronger proof than that produced by the defendant to satisfy me that officials connected with the patent office, or reputable patent solicitors, would purposely do the things which are rather hinted at than deliberately charged by the defendant for the alleged purpose of benefiting one inventor at the cost of another, who was equally meritorious.

Nor do I think the objection raised by the defendant to the validity of the letters patent under consideration for want of sufficient specification of the said "prepared sheets for stencils so as to enable those skilled in the art to make, produce, and use the same" is well taken. Taking the whole patent together, I think there can be no question that the invention and the mode of use is clearly described and set forth by Broderick, so that he who runs may read and understand. There seems to be neither ambiguity nor uncertainty in the language of the specifications and claims. They are concise, terse, and well expressed. As is quite usual in cases of this sort, the evidence touching infringement is contradictory. I think the weight of the testimony preponderates in favor of the complainant, and upon a careful consideration of all the testimony upon this part of the case I am of the opinion that it has been satisfactorily proved that the defendant did infringe these letters patent, as he has been charged. I think it only fair to say that while, in my opinion, Broderick's invention displays novelty and patentability, and that he has certainly accomplished a desired end by the creation and use of novel means, and that as such he is entitled to that protection which the law grants to a successful inventor, yet such conclusion has been reached only after much hesitation. If such judgment be based upon insufficient facts, or unsound reasoning, I am glad to know that the defendant can find his remedy in a court of review. There must be a decree for the complainant, as prayed for.