### A. B. DICK CO. v. POMEROY DUPLICATOR CO. et al.

(Circuit Court, D. New Jersey. March 27, 1894.)

1. PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

   Where the validity of a patent has been sustained in one suit as against a plea of anticipation by a prior patent, the same issue presented by a defendant in a subsequent suit for its infringement, in the same court, will not be considered on an application for a preliminary injunction, although defendant claims to have newly discovered evidence thereon.

2. SAME—INFRINGEMENT—STENCIL SHEETS.

   The Broderick patent, No. 377,706, for improvements in prepared sheets for stencils, *held* infringed, on a motion for a preliminary injunction.

In Equity. Suit for infringement of letters patent No. 377,706, issued to John Broderick February 7, 1888, for improvements in stencil sheets. On motion for preliminary injunction.

D. H. Driscoll, for complainant.
J. D. Gallagher, for defendant.

GREEN, District Judge. This matter comes before the court on a motion for a preliminary injunction. The bill of complaint alleges that the defendants are infringing letters patent No. 377,706, granted to John Broderick February 7, 1888, for improvements in prepared sheets for stencils, which letters patent had been duly assigned to the complainant, who is now the sole owner thereof. The validity of these letters patent was established in this court by a decree made the 1st day of August, 1893, in a suit in which the said A. B. Dick Company was complainant, and one William G. Fuerth was the defendant. 57 Fed. 834. In the opinion of the court in that case a stencil made by the combination of an exceedingly porous paper, having however tough fibers, such as the Japanese dental paper, or Yoshino, with a coating of wax of such consistency that its particles would readily flow or move upon each other under pressure, was novel in the art, and evidenced invention. The testimony in that case clearly established the fact that what was called a "soft wax" was first used as a coating for stencils by Broderick; that theretofore the coating commonly used had been a hard, brittle wax, which, when put under pressure, or cut or broken away in the manufacture of the stencil, broke or ruptured, or carried with it the fibers of the underlying sheet upon which it had been spread. Hence arose the difficulty of making clear and distinct certain loop letters, so called. This was entirely avoided by Broderick's use of a soft wax as a coating. And as has been said, he was the first to select, particularize, and use such a wax for such a purpose. It was further said by the court in A. B. Dick Co. v. Fuerth that the wax used by Broderick was called a "soft wax" because its particles flowed upon each other and moved readily and easily under slight pressure. The criterion of softness of wax, as distinguished from hardness of wax, is to be found in the capability of the easy displacement of its particles. If such easiness of displacement characterizes the substance, it is essentially soft. The defendants in the present case are making a stencil in all respects practically similar to the stencil protected by the Broderick patent, save that for the coating of the stencil sheet they use a wax whose fusion point is 165° F. And their insistment is that as Broderick described the wax he uses, preferably, as having a fusion point of 120° F., it follows that the wax they use is much harder, and not within the limitations of his letters patent But the fusion point of the wax used is not the test of hardness. The true test is, will its particles move readily under slight pressure. If so, it is "soft." That the wax used by the defendants has this characteristic of softness cannot be denied. The fact that the stencil made by them is a perfect stencil proves it. And although the wax with which they coat their basic sheets may be different in composition from that used by the complainant, yet none the less is it a "soft" waxy or gummy coating, within the terms of Broderick's patent.

In the case of A. B. Dick Co. v. Fuerth, the defendant, inter alia, claimed that the Broderick patent was anticipated by letters patent granted to one Nickerson May 27, 1879, and numbered 215,833. This

patent was duly considered by the court, and the contention of the defendant was not sustained. The present defendants insist that they have discovered new testimony bearing upon the Nickerson patent and its practical operation, which they should be permitted to lay before the court before the pending motion is determined. An outline of the proposed testimony has been given in the affidavits submitted by the defendants. I do not think it proper to discuss here the probable or possible effect of this testimony. It must not be overlooked that the complainant's patent has once been sustained by this court when directly antagonized by the Nickerson patent. If it shall appear to be proper under any circumstances to admit such new evidence when offered, the defense raised thereby should rightly be relegated to the final hearing. A very serious question must first be settled, which concerns the right of the present defendants to interpose a defense of the character which they now seek to make. And this question arises from this state of facts: Shortly after the commencement of the suit of Dick v. Fuerth, the defendants organized a corporation known as the Redding Ink & Duplicator Company (he being one of the incorporators), which took over all the business of Fuerth, and continued it for some time. While that suit was pending in this court, and some time in 1891, the corporate name of this company was changed to that of Pomeroy Duplicator Company. This corporation under this new name is one of the present defendants. Of the last-mentioned company, Charles T. Pomeroy and Eltweed Pomeroy, two of the present defendants, are stockholders and directors. It is in evidence that the Pomeroy Duplicator Company, or the Messrs. Pomeroy individually, contributed to the expenses of the defense in the Fuerth Case. The question therefore arises, are they not all privies? And if so, are not the present defendants estopped from raising any defense save that of noninfringement? It is unnecessary to decide this now. It will more properly come before the court when the evidence proposed is actually presented.

The motion for injunction pendente lite is granted.