## A. B. DICK CO. v. WICHELMAN.

(Circuit Court, S. D. New York. April 9, 1895.)

1. COURTS—COMITY IN PATENT CASES.
   The fact that a decree sustaining a patent, after an exhaustive examination, has been set aside as collusive, because at the time of the hearing there was no controversy existing between the parties, does not destroy or much weaken the force of the reasoning by which the decision was reached, but may make further examination proper, in a suit on the patent in another circuit.

2. PATENTS—INVENTION—NEW USE.
   The waxing of a particular kind of porous paper, to prepare it to be formed into blanks for stencils, by expressing the wax on the lines of the

types, is a new use, so remote from that of waxing the same kind of paper for waterproof or airtight purposes, that its discovery might constitute patentable invention.

3. SAME—STENCIL SHEETS.

The Broderick patent, No. 377,706, for a "prepared sheet for stencils," which covers a paper having uniform direct pores through it, of a proper density for the passage of ink (preferably Yoshino paper), waxed to such density that, when pressed upon types, the latter will clear the spaces impressed for the passage of ink to the surface to be printed upon, *held* valid, as showing patentable invention. A. B. Dick Co. v. Fuerth, 57 Fed. 834, followed.

This was a suit in equity by the A. B. Dick Company against Frederick A. Wichelman for alleged infringement of a patent for stencil sheets.

D. H. Driscoll, for plaintiff.

Frederick A. Wichelman, pro se.

WHEELER, District Judge.    This suit is brought upon patent No. 377,706, dated February 7, 1888, and granted to John Broderick for a "prepared sheet for stencils."    The specification states that the invention consists of "a transmitting printing sheet of a thin material, coated or filled with a substance impervious to ink, which sheet is so porous that, in the removal of the filling or coating at any point, the sheet becomes open to the transmission of ink thereat, so that, by removing the filling or coating in the form or shape of any letter, figure, design, etc., the sheet becomes open to the transmission of ink in the form of such letter, figure, design, etc."; that, in practice, "a thin, porous sheet of material impregnated or coated with a gummy or waxy substance, or other material impervious to ink, said sheet being of such porosity, and said gummy or waxy substance or other filling of such consistency, that when the impregnated or coated sheet is placed upon a suitable support or bearing surface, and impressed upon with a writing or printing instrument, of whatever character, the gummy or waxy substance or other material will, under the pressure thereof, be displaced at the points or lines of impression, so as in all cases to leave them open to the passage of ink through the pores of the sheet"; that it is prepared by preference "from a sheet of thin, highly porous paper by immersing the same in a bath of melted gummy or waxy substance, such as paraffine, of about 120° Fahrenheit fusion point, or by any other suitable method of waxing paper now known in the arts"; and that stencils had theretofore "been made by piercing a sheet of paper with numerous small holes, through which ink is then transmitted, also by abrading a sheet of waxed or varnished paper, and thereby disturbing, tearing, and lacerating the fibers or substance of the paper to such an extent that ink will be readily transmitted therethrough at the lacerated or disturbed portions, the paper being itself of such a character that ink will not be readily transmitted when the sheet is in its normal condition, and also that sheets of paper close in texture and highly sized, such as bank post, have been coated with a suitable varnish, and subsequently subjected to the action of chemicals

which open it to the transmission of ink at the points or lines of printing."

The claims are for:

"(1) A transmitting printing sheet, consisting of a thin, porous sheet, through which ink is readily transmitted, such as Japanese dental paper or yoshino, filled or coated with a substance impervious to ink, as paraffine, substantially as described.

"(2) A transmitting printing sheet, consisting of a thin, porous sheet, through which ink is readily transmitted, such as Japanese dental paper or yoshino, filled or coated with a substance impervious to ink, as paraffine, and having this filling or coating removed at the points or lines of printing, substantially as described, for the purpose specified.

"(3) A prepared sheet for stencils, consisting of a sheet of Japanese dental paper or yoshino, coated with a substance impervious to ink, substantially as described."

The defenses relied upon are the prior uses stated in the specification, and that of the defendant himself.

The patent was before the United States circuit court for the District of New Jersey, and was sustained by Green, J., upon a very thorough examination and exhaustive opinion. A. B. Dick Co. v. Fuerth, 57 Fed. 834. Mere reference to that case would be sufficient here, but the decree was vacated as collusive, for "that, at the time when the hearing in the said case was had, there was no controversy existing between the said complainant and the defendant," which is much relied upon to break the force of the decision. This does not, however, destroy nor much weaken the force of the reasoning by which the decision was reached, but may make further examination of the case here more proper.

The first and third claims appear to be for the blank sheets of waxed paper, described, for making stencils proper from, and the second appears to be for the stencils when made. If the invention was merely of waxed paper, as the defendant seems to suppose, his own achievements would anticipate it; or if it was merely of stencils made of waxed paper, as he alternately argues, these statements in the specification would rebut the novelty. But it appears to be of paper having uniform direct pores through it of a proper size for the passage of fluids, and waxed to such density that types will so clear the spaces impressed as to make way there for the passage of ink to the surface to be printed upon, producing a much improved, if not absolutely new, result. The paper was not new, nor the waxing, but the waxing for such purpose might, for aught that is in the patent, be entirely new. This patent is somewhat like that of Cummings, for vulcanized plates of teeth, in Smith v. Vulcanite Co., 93 U. S. 486. There, as was said by the court: "The teeth, the wax, the plaster, the moulds, the soft rubber, and the hard rubber were none of them new." And "the steps in the process were not all new." Still the argument that the patentee had merely put old things to new uses was overruled, and the patent was upheld.

The evidence of the defendant shows clearly enough that he had, before this invention, waxed most kinds of paper with paraffine for various purposes, and probably that he had so waxed this kind of

paper for some purposes. But it falls short of showing satis. factorily and beyond fair doubt that he had actually ·ever waxed this kind of paper, and far short of so showing that he had ever made such blanks as these for stencils, or had, by waxing and shaping, made this kind of paper into form suitable for such stencils; and, if he had actually so. waxed this kind of paper for waterproof or airtight purposes that it might have been formed into blanks for stencils, this new use would be remote from and not analogous to that, and the discovery of it and adaptation of the material to it might constitute patentable invention. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194. This case, as now made up and presented, seems to fall within the principles of the decision in that. Decree for plaintiff.